**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

IN RE:

**DELTECH MONOMERS OPCO, LLC**                    **CASE NO. 26-10182**
**PUTATIVE DEBTOR**                               **CHAPTER 7**

**MEMORANDUM OPINION**

This involuntary bankruptcy was initiated by four petitioning creditors (collectively,

"Petitioning Creditors")[1] under chapter 7 of the Bankruptcy Code.  An involuntary petition is

treated much like a lawsuit in that the petition and a summons must be served on the putative

debtor.  Section 303 of the Bankruptcy Code then affords the putative debtor, referred to in the

statute as a "person," time to file an answer.  An order for relief is therefore delayed, along with

the appointment of a chapter 7 trustee, until such time as the court determines whether the case

should proceed or be dismissed.  This typically leads to either (1) a highly contested evidentiary

hearing or trial over the statutory requirements for an involuntary bankruptcy or, perhaps more

common, (2) a decision by the putative debtor to convert the case to a voluntary petition.  As a

matter of first impression, the putative debtor here, Deltech Monomers Opco, LLC ("Deltech" or

"Putative Debtor"), no longer exists under applicable Delaware law, having both executed an

assignment for the benefit of creditors and filed a certificate of cancellation with the Delaware

Secretary of State almost three months prior to the filing of the involuntary petition. What

remains, it would seem, aside from claims and causes of action aplenty, is the assignee of the

Putative Debtor, possible third-party litigation targets, and several understandably agitated

---

[1] The involuntary petition was filed by Tankworx & Construction Services, LLC, Picou Group Contractors, LLC, Momentum Constructors, LLC, and Iberville Insulations, LLC.

unsecured creditors with millions of dollars in unpaid claims[2] for work performed on the Louisiana facility before it was sold.

Instead of filing an answer, Deltech Monomers Opco (assignment for the benefit of creditors), LLC ("Assignee") timely filed a Motion for Abstention and Dismissal of Involuntary Petition Pursuant to 11 U.S.C. § 305[3] ("Motion to Dismiss") and set the matter for hearing on April 29, 2026.  The court treats this filing as a Rule 12(b)[4] responsive pleading in advance of filing an answer. The Petitioning Creditors did not challenge the initial procedural approach taken by the Assignee in response to the involuntary petition.  Instead, the Petitioning Creditors filed a Motion to Convert Hearings Set for April 29, 2026 to Status Conference and for Extension of Time to Respond to Motion to Dismiss.[5] The Assignee objected to this motion, suggesting, among other things, that the hearing on April 29 should go forward on the limited issue of eligibility to be a debtor.  The court agreed, entering an order deeming the April 29 hearing a "preliminary hearing limited to oral argument on the threshold issue of whether a canceled Delaware limited liability company is eligible to be a debtor in a bankruptcy case."[6] The order also limited briefing in response to the Motion to Dismiss to the threshold issue to be heard at the preliminary hearing, reserving all rights as to the other aspects of the Motion to Dismiss.  The Petitioning Creditors timely filed their Objection to the Motion to Dismiss on

---

[2] The Petitioning Creditors alone list aggregate debts of more than $4.5 million owed to that group.  The record does not reflect the total debts owed by Deltech.

[3] P-45.

[4] F.R.B.P. 1011(b) provides in pertinent part that "[a] defense or objection to the petition must be presented as prescribed in Fed. R. Civ. P. 12."

[5] P-69.

[6] P-79.

April 21, 2026.[7]  In very broad strokes, that Objection challenged the Assignee's standing to file a responsive pleading and contended that the bankruptcy court has the power to nullify the certificate of cancellation, thereby ostensibly breathing new life into Deltech such that it is indeed a "person" eligible to be a debtor in bankruptcy.

The preliminary hearing went forward on April 29, 2026. After hearing oral argument, and without the admission of any evidence, the court took the matter under advisement and now renders its ruling.

## I. Background

At least for purposes of the preliminary hearing, the following timeline of events is not disputed.  On December 9, 2025, Deltech sold substantially all its assets. On December 22, 2025, it executed a "General Assignment" to the Assignee. Also on December 22, 2025,  Deltech filed a Certificate of Cancellation with the Delaware Secretary of State.   On March 5, 2026, the Petitioning Creditors filed an involuntary petition under chapter 7 of the Bankruptcy Code against Deltech.

## II. Standing

The Petitioning Creditors contend that the Assignee lacks standing to respond to the involuntary petition and therefore lacks standing to raise the issue of Deltech's eligibility to be a debtor.  They cite section 303(d) of the Bankruptcy Code, which provides that "[t]he debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to a petition under this section." Similarly, F.R.B.P. 1011(a) states that "[a] debtor may contest an involuntary petition filed against it."

---

[7] P-81.

The Assignee argues it has standing to seek dismissal of the involuntary petition because prior to filing a Certificate of Cancellation, Deltech contractually granted Assignee power of attorney to, in its discretion, defend suits filed against Deltech. Before reaching a decision on standing, the court must first determine what impact the filing of a cancellation certificate has on a Delaware limited liability company. In *In re Reinz Wisconsin Gasket, LLC*,[8] the Court of Chancery of Delaware answered that question rather definitively:

> When a certificate of cancellation is filed for an entity, its "existence as [a] jural entit[y] cease[s]." Its "legal existence ends." A defunct entity ceases to be a "body corporate." Because the entity is no longer viable, it "no longer has a registered agent or active senior officers." … A defunct entity cannot otherwise make any decisions or take any action. It follows that a defunct entity cannot retain counsel or speak through counsel unless and until a receiver or other fiduciary is appointed.[9]

The case of *In re A & B Liquidating, Inc.*,[10] is instructive. In that case, an involuntary petition was filed against A & B Liquidating, Inc. ("A&B"). A&B's assignee for the benefit of creditors, James Smith ("Smith"), filed an answer to the involuntary petition, and one of the petitioning creditors objected to Smith's standing. The court held that Smith had standing to respond to the involuntary petition, finding:

> An assignee for the benefit of creditors is not a creditor; rather, he holds the same position as the debtor and represents the debtor's interests. He has no personal interest which he may want to promote at the expense of other creditors. *See Plitt* [*v. Stevan*], [223 Md. 178, 162 A.2d [762,] 765 [1960]. In the instant case, Smith is the only real party in interest now that the debtor has divested itself of its assets. … In light of an assignee's responsibilities and interests, this Court concludes that absent the filing of an answer by the Debtor, the assignee for the benefit of creditors has standing to file an answer. *See, e.g., Wood v. Natural Soda Products*

---

[8] *In re Reinz Wisconsin Gasket, LLC*, No. CV 2022-0859-MTZ, 2023 WL 3300042 (Del. Ch. May 8, 2023).

[9] *Id*. at *2 (footnotes omitted).

[10] *In re A & B Liquidating, Inc.,* 18 B.R. 922 (Bankr. E.D. Va. 1982).

*Co.*, 31 F.2d 110 (9th Cir. 1929); *In re Morosco Holding Co., Inc.*, 296 F. 516 (S.D.N.Y.1924).[11]

Although not directly on point, the case of *In re Skybridge Spectrum Foundation*[12] is also instructive. That case involved a similar issue of whether the receiver of a putative debtor has standing to answer an involuntary petition.  The court found:

> To determine whether a receiver may file an answer, courts consider various factors, including whether the debtor filed an answer, the language of the state receivership statute, and the receiver's powers under the receivership order.[13]

In *Skybridge Spectrum Foundation*, the court concluded that the receiver had standing to respond to the involuntary petition.[14]

In the case at bar, Deltech did not file an answer.  The General Assignment[15] executed by Deltech provides Assignee with the authority to act on Deltech's behalf.  Paragraph 8 of the General Assignment[16] provides in pertinent part:

> Power of Attorney. Assignor, by this General Assignment, hereby grants Assignee, an irrevocable general power of attorney, coupled with an interest, which power of attorney is for all purposes and specifically includes the right of Assignee … to prosecute any action in the name of Assignor as Attorney in Fact … Further, on the date this General Assignment is accepted by Assignee, Assignee shall succeed to all of the rights and privileges of Assignor, … and Assignee shall be deemed to be a representative of Assignor with respect to all such potential or actual claims, cases, controversies, and causes of action. While Assignee is not required to defend any action being asserted against Assignor, Assignor, by this General Assignment, hereby grants Assignee an irrevocable general power of attorney,

---

[11] *Id*. at 925.

[12] *In re Skybridge Spectrum Foundation,* No. 21-BK-5-ELG, 2023 WL 5561105 (D.D.C. Aug. 29, 2023).

[13] *Skybridge*, at *3 (citing *n re Starlite Houseboats, Inc.*, 426 B.R. 375, 381 (Bankr. D. Kan. 2010); *In re A & B Liquidating, Inc.*, 18 B.R. 922, 925 (Bankr. E.D. Va. 1982)).

[14] *See also In re 318 Retail, LLC*, 640 B.R. 407 (Bankr. N.D. Ill. 2022); 2 Collier on Bankruptcy ¶ 303.20 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026).

[15] P-48, p. 7.

[16] P-48, p. 11.

> coupled with an interest, which power of attorney specifically includes the right, but not the obligation, of Assignee to defend against any action pending or brought against Assignor in the name of Assignor as Attorney in Fact.

The language of the General Assignment clearly gives, in this court's view, the Assignee the right to defend against actions brought against Deltech. And as alluded to earlier, an involuntary petition is unquestionably an action brought against Deltech. Based on Delaware law, the General Assignment, and the above instructive cases, the court finds that the Assignee has standing to seek dismissal of the involuntary petition. The court also points out that even if the Assignee lacked standing to raise the issue of whether Deltech is eligible to be a debtor, it is a threshold issue that the court can certainly raise on its own.

### III. Is Deltech Still a Person Eligible to Be a Debtor?

Section 303(a) of the Bankruptcy Code provides that "[a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, … or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced." Pursuant to section 109(b), "[a] person may be a debtor under chapter 7 of this title," except in certain enumerated instances not at issue here. Limited liability companies are considered "persons" as used in section 109(b).[17] Section 101(41) defines "person" as used in the Bankruptcy Code; it provides that "[t]he term 'person' includes [an] individual, partnership, and corporation."

Here, the Assignee contends Deltech is no longer a "person" eligible to be a chapter 7 debtor because it ceased to exist as a legal entity immediately upon the filing of the Certificate of Cancellation. In *In re Two Wheels Props., LLC,*[18] the court held that eligibility to be a debtor is

---

[17] *See* 2 Collier on Bankruptcy ¶ 109.02 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026).

[18] *In re Two Wheels Props., LLC,* 625 B.R. 869 (Bankr. S.D. Tex. 2020).

determined by state law.[19] Deltech was formed under Delaware law, so this court will examine Delaware law to determine whether Deltech is eligible to be a debtor.

The Assignee contends that Deltech lost its eligibility to be a debtor once it filed a Certificate of Cancellation with the Delaware Secretary of State's Office pre-petition. A portion of the quote from *In re Reinz Wisconsin Gasket, LLC*,[20] cited earlier regarding standing, is also relevant here.

> When a certificate of cancellation is filed for an entity, its "existence as [a] jural entit[y] cease[s]." Its "legal existence ends." A defunct entity ceases to be a "body corporate."[21]

The Petitioning Creditors cite *In re Soderberg & Schafer CPAS, LLC*[22] for the proposition that dissolution of an entity does not foreclose its ability to be a debtor. The *Soderberg* court concluded that the putative debtor was eligible to be a debtor because it had not <u>completed</u> winding up its affairs.

The Petitioning Creditors argue that the Assignee admitted before this court that wind down efforts had not been completed. As such, Deltech still exists, is a person within the meaning of the relevant bankruptcy provisions, and is therefore eligible to be a debtor. *Soderberg* is distinguishable from the case at bar because its holding turned on the related but different concept of dissolution of entities.

---

[19] *Id*. at 872-73.  *See also In re Superior Boat Works, Inc.,* 438 B.R. 878 (Bankr. N.D. Miss. 2010); *In re ABZ Insurance Services, Inc.*, 245 B.R. 255 (Bankr. N.D. Tex. 2000)).

[20] *In re Reinz Wisconsin Gasket, LLC*, No. CV 2022-0859-MTZ, 2023 WL 3300042 (Del. Ch. May 8, 2023).

[21] *Id*. at *2 (footnotes omitted).

[22] *In re Soderberg & Schafer CPAS, LLC*, 441 B.R. 262, 266 (Bankr. N.D. Ohio 2010).

Indeed, Delaware draws an important distinction between dissolution and cancellation.  6 Del. Code § 18-801 sets forth the circumstances under which "[a] limited liability company is dissolved and its affairs … wound up …"  Cancellation is the final step in that process.  6 Del. Code § 18-203(a) provides, in pertinent part, that "[a] certificate of formation shall be canceled upon the dissolution and the completion of winding up of a limited liability company …"[23]

The Petitioning Creditors also urge this court to disregard the effectiveness of Deltech's Certificate of Cancellation because they believe it was filed prematurely and perhaps even fraudulently:

> [T]he Debtor cannot prematurely cancel its existence while its wind-up process is still ongoing in an effort to insulate its decisions from the scrutiny of the bankruptcy courts. Delaware law does not allow an LLC to file for cancellation when its wind-up is, in the [Movant]'s words, "near-complete" or "making strides toward completion." For this reason alone, the Debtor's cancellation was without effect, rendering it a legally existing entity that is eligible to be a debtor under the Bankruptcy Code.[24]

Irrespective of vague notions of fairness, equity, and the power of this court to rectify a perceived wrong, the Certificate of Cancellation remains on file with the Delaware Secretary of State's office unless and until it is nullified. A survey of Delaware cases shows that the procedure for seeking nullification of a Certificate of Cancellation is filing a petition and asking

---

[23] The Court of Chancery of Delaware discussed the steps under Delaware law for dissolving and ultimately canceling a limited liability company in footnote 69 of *Gurney-Goldman v. Goldman*, 321 A.3d 559 (Del. Ch. 2024), *aff'd,* No. 166, 2025, 2026 WL 237221 (Del. Jan. 29, 2026), finding:

> Dissolution marks the start of a winding-up period. *See* 6 *Del. C.* § 18-801(a). During the winding up phase, the LLC engages in the same tasks as the corporation: marshalling its assets, discharging or establishing reserves for liabilities, and ultimately distributing any remaining surplus to its members. *See id.* §§ 18-803, 18-804. At the end of the winding up process, an authorized person files a certificate of cancellation, *id.* § 18-203, which terminates the LLC's existence. *See id.* § 18-201(b). Cancellation is termination, and it means just that. *See In re Reinz Wisconsin Gasket, LLC*, 2023 WL 3300042, at *1 (Del. Ch. May 8, 2023) ("Counsel's purported representation of a defunct limited liability company is not only puzzling, but impossible.").

[24] P-81, p. 12.

for that relief.[25] Therefore, absent a court ruling (somewhere) nullifying the Certificate, it remains effective. This court finds that Deltech is not currently a legal entity and therefore is not a person eligible to be a chapter 7 debtor.

Finally, the Petitioning Creditors ask this court to nullify Deltech's Certificate of Cancellation and then move forward with the involuntary bankruptcy case.  The Petitioning Creditors cited the opinion of the bankruptcy court for the District of Delaware in *In re Opus East, LLC*[26] for their proposition that this court has authority, even prior to the entry of an order for relief, to nullify the Certificate of Cancellation. *Opus East*, however, is distinguishable from the case at bar. In that case, the debtor filed a voluntary petition for relief under chapter 7. The chapter 7 trustee then sought, among other things, to revoke the certificate of *dissolution* of an entity against whom the estate presumably had a valid preference action.  The issue of whether the debtor was a person eligible for bankruptcy relief was not before the court. The court cited the requirements for dissolution pursuant to 6 Del. Code § 18-804 and then revoked the preference target's certificate of dissolution, which of course does not have the force and effect of resurrecting a canceled company.

The case of *In re WBE, LLC*[27] is also distinguishable. In that case, the chapter 7 trustee filed an adversary complaint against JDH Management, LLC ("JDH") asserting preferential and fraudulent transfers. After the complaint was filed, JDH, not the debtor, filed a Certificate of

---

[25] *See In re CC&F Fox Hill Assocs. Ltd. P'ship,* No. CIV. A. 15430, 1997 WL 349236 (Del. Ch. June 13, 1997) (an *ex parte* petition to nullify the limited partnership's certificate of cancellation and to obtain an order for a rule to show cause why the certificate of cancellation should not be nullified was filed);   *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc.,* 854 A.2d 121 (Del. Ch. 2004) (petition was filed to nullify the certificate of cancellation); *Capone v. LDH Mgmt. Holdings LLC*, No. CV 11687-VCG, 2018 WL 1956282 (Del. Ch. Apr. 25, 2018), *judgment entered,* (Del. Ch. 2018) (petition was filed to nullify the certificate of cancellation).

[26] *In re Opus East, LLC*, 528 B.R. 30 (Bankr. D. Del. 2015).

[27] *In re WBE, LLC*, No. 09-10649 MFW, 2011 WL 2607090 (Bankr. D. Del. June 30, 2011).

Cancellation. The court did not rule on whether JDH could be sued but instead dismissed the complaint against JDH on the basis that the plaintiff failed to sufficiently plead its causes of action.

The case of *Simon v. Healthsouth of Sarasota Ltd. Partnership*[28] cited by the Petitioning Creditors is also distinguishable.  One of the defendants had triggered dissolution but no certificate of cancellation had been filed before the bankruptcy case was filed. The court held that it was not convinced at the early stage in the case that the company's *dissolution* precluded the plaintiffs' claims against it and granted leave to amend the complaint.

The Petitioning Creditors also cite *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc.*[29]  In that case, the plaintiff was a former member of a limited liability company.  The plaintiff filed suit against the company and other former members seeking, among other things, breach of the agreement and to nullify the certificate of cancellation. The company sought dismissal of the breach of contract claim, contending that a suit could not be brought against it because it had filed a certificate of cancellation. The court found:

> § 18–803(b) of the LLC Act provides that suit generally may be brought by or against a limited liability company only until the certificate of cancellation is filed. But, Metro has explicitly sought to have the certificate of cancellation nullified on the ground that [the LLC's] affairs were not "wound up in compliance" with the LLC Act.  … Thus, because the complaint pleads facts that support the inference that [the LLC] was wound up in contravention of the LLC Act, the complaint also pleads facts that support an application to nullify the certificate of cancellation.  As a consequence, [the] motion to dismiss Metro's claim for breach of § 5(e) of the LLC Agreement is denied.

---

[28] *Simon v. Healthsouth of Sarasota Ltd. P'ship*, No. 8:12-CV-236-T-33AEP, 2019 WL 11505269 (M.D. Fla. Dec. 16, 2019).

[29] *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc.,* 854 A.2d 121 (Del. Ch. 2004).

Delaware courts cite *Metro Communication* for the proposition that an action to nullify a certificate of cancellation can be brought in conjunction with another action against the company.[30]   *Metro Communication*, however, is not helpful here because it is not a bankruptcy court case, and it does not show that a bankruptcy court can nullify a certificate of cancellation to elevate a canceled company back to "person" status in order to proceed with an involuntary petition.[31]

In *800 Cooper Finance, LLC v. Liu*,[32] a New Jersey federal district court applied Delaware law to nullify a certificate of cancellation and allow other causes of action to go forward against a canceled company.  This decision may provide a useful roadmap for nullifying a Delaware certificate of cancellation, but it does not afford a bankruptcy court the power to move down that road without first having an eligible debtor to legitimize the involuntary bankruptcy.

Perhaps the case of *In re TPG Troy, LLC*[33] cited by Petitioning Creditors comes the closest to the instant situation. In *TPG Troy*, the court heard, all at one time, the issues of the putative debtor's eligibility, whether the putative debtor's certificate of cancellation should be nullified, and whether the involuntary petition should be dismissed on other grounds. But that court dismissed the involuntary petition on other grounds and did not reach the issue of whether

---

[30] *See Matthew v. Laudamiel*, No. CIV.A. 5957-VCN, 2012 WL 605589, n. 150 (Del. Ch. Feb. 21, 2012).

[31] The similar case of *Thor Merritt Square, LLC v. Bayview Malls LLC*, No. CIV.A. 4480-VCP, 2010 WL 972776 (Del. Ch. Mar. 5, 2010), cited by the Petitioning Creditors also does not prove that this court can move forward without an eligible debtor.

[32] *800 Cooper Finance, LLC v. Liu*, No. CV 16-736 (JHR/JS), 2022 WL 855647 (D.N.J. Mar. 22, 2022).  The court believes that the Petitioning Creditors incorrectly cited to *800 Cooper Fin., LLC v. Liu*, 2019 WL 578725 (D.N.J. Oct. 10, 2019), in their Objection.  No such case was found.

[33] *In re TPG Troy, LLC,* 492 B.R. 150 (Bankr. S.D.N.Y. 2013), *subsequently aff'd,* 793 F.3d 228 (2d Cir. 2015).

the putative debtor was eligible to be a debtor or whether the certificate of cancellation could be nullified by the bankruptcy court.

## IV. Conclusion

The Petitioning Creditors have not convinced this court that it can move forward with this involuntary case without an eligible debtor. The Bankruptcy Code provides that "[a]n involuntary case may be commenced … only against a person …"  Since Deltech is currently not a person under applicable Delaware law, it is not eligible to be an involuntary debtor.

The Motion to Dismiss filed by the Assignee is granted without prejudice to the rights of the Petitioning Creditors to challenge Deltech's cancellation. Should they successfully obtain a ruling in another court nullifying Deltech's Certificate of Cancellation, the dismissal of this case will not serve to preclude the filing of another involuntary petition. The court will enter a separate order in accordance with this Memorandum Opinion.

Baton Rouge, Louisiana, May 1, 2026.

**/s/ Michael A. Crawford**
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE